STATE OF NORTH CAROLINA on the relation of JOSEPH COTTON and wife *v.* WILLIAM FENNER, RICHARD H. SMITH and BENJAMIN F. GARY.

In an action against a guardian and the sureties upon his guardian bond, it was in evidence: that the ward, the feme plaintiff, having married, her husband demanded of the guardian a settlement of his account as guardian. Afterwards, in a conversation concerning the same, the guardian stated to the male plaintiff, that the feme plaintiff, his ward, was largely indebted to him, at the time showing to the male plaintiff the book in which his guardian account was kept, and representing that the account therein was correct. The guardian then proposed to the male plaintiff that if he and his wife, the ward, would give him a receipt in full of all demands against him as guardian, he would give the plaintiffs a receipt for the alleged balance due. The proposition was accepted and the respective receipts given, the plaintiffs never having examined the account. Subsequently the plaintiffs discovered that the guardian had credited himself in the account with large sums paid in Confederate money, making no deduction on account of the depreciation of the same: *Held*, that the plaintiffs were entitled to an account.

This was a CIVIL ACTION for an account tried before *Henry*, *J.*, at December (Special) Term, 1874, HALIFAX Superior Court.

The following are the facts in the case as disclosed by the statement signed by the counsel and sent up as a part of the record:

The defendant, Fenner, was appointed by the late County Court of Halifax county, at the February Term, 1861, the guardian of the *feme* plaintiff, Ann B. and her brother James S. Paul, and executed his bond as such guardian, with the defendants, Smith and Gary, as sureties thereto, payable to the State of North Carolina, in the penal sum of thirty thousand dollars. Immediately thereafter the defendant, Fenner, as guardian, entered upon the discharge of his duties, and besides negroes and other property of his wards, he received at different times as the property of the *feme* plaintiff, sixteen hundred and eighteen dollars and thirty-two cents, which belongs to the capital of the estate of his said ward, as follows:

| | | |
|---|---:|---:|
| From the sale of the land belonging to the estate of C. A. Paul.....................................$ | 732 | 50 |
| From the sale of land belonging to Ann Paul.... | 450 | 50 |
| Of Richard H. Smith, administrator of C. A. Paul, | 253 | 38 |
| Of Richard H. Smith, administrator, &c......... | 65 | 87 |
| From sale of boy Fred, sold Nov. 1st, 1863, for Confederate money, $1,025, scaled,........... | | |
| Making...............................$ | 1,618 | 32 |

On the 19th day of June, 1867, the plaintiff, Ann B., intermarried with the plaintiff Joseph Cotton, and arrived at full age on the —— day of April, 1869. After the intermarriage of the plaintiffs, the plaintiff Joseph, demanded of the defendant Fenner, a settlement of his accounts as guardian, and the payment to him of such balance as might be due to his said ward. In the latter part of the year 1869, or early in 1870, the plaintiff Joseph, went to the store of the defendant Fenner, where he met the defendant Smith, and a conversation arose as to the settlement of the guardian account. Smith left, saying that the plaintiff Joseph, and the defendant Fenner, could settle without his aid. Fenner then stated that according to his guardian book, in which the guardian account of the *feme* plaintiff was kept, and which was then written

out in full, it appeared that his ward was indebted to him, as her guardian, over fifteen hundred dollars, and proposed to the plaintiff Joseph, that he, Fenner, would give up the whole of this sum to plaintiffs, and give them a receipt in full therefor, if plaintiffs would give him their receipt in full settlement of his guardian account. At the same time Fenner handed to the plaintiff the book in which he then said his guardian account was stated, and told the plaintiff Joseph, that he could take the book and examine the account with his wife, at their leisure, but that they would find it correct. The said Joseph took the book and held it in his hands a short while when he returned it to the defendant without having examined it at all, and agreed to accept the proposition of the defendant Fenner. Thereupon the receipt was written and signed by the plaintiff Joseph, and was taken home by him for the signature of the *feme* plaintiff. It was signed by her and delivered to the defendant Fenner, about a week afterwards.

There was no order of any Court of competent jurisdiction obtained by the defendant as guardian of the *feme* plaintiff, allowing him to expend any portion of the principal of her estate, for her support and education.

In the account as contained in the defendant Fenner's book, the guardian had credited himself with large sums, paid for his ward in Confederate Treasury Notes when they were at a discount from twenty to fifty for one. If these payments had been scaled at their value when they were made, there would have been a balance due his ward.

The defendant Fenner, testified that the sums of money above mentioned as belonging to the estate of his ward were well invested. In addition to said money his ward owned a considerable number of slaves. During the war and especially the latter years of the war the cost of supporting the expensive negroes was largely in excess of the ward's income. He made efforts to put them out to the lowest bidder, but that on more than one occasion the sums offered for certain families of said slaves were so large that he kept them at home, built houses

for them and supported them.   In order to do so he was com-
pelled to call in and use the principal money of his ward's
estate, having no other source from which to draw the neces-
sary funds.   That by this means he supported the said families
at about one half the price it would have cost if they had been
put out to the lowest bidder.   That in supporting these families
he had expended of his own means the amount of the balance
against his ward, and that this balance was in Confederate
money.

The plaintiff Joseph, was twenty-two years old at the time
of his marriage, and was raised in the immediate neighborhood
of the defendants Fenner and Smith, both of whom were old
men, and the latter a man of great influence in the neighbor-
hood.   The plaintiffs never examined the guardian account and
only became aware of the alleged errors which were made in
the statement thereof, from report of the settlement of the de-
fendant Fenner with his other ward and a report that upon a
proper settlement of said accounts, the defendant would be
largely indebted to his said ward.

The defendant Fenner, made no return to Court after the
year 1862, of his account as guardian of the *feme* plaintiff.   It
appeared from his guardian book, that on the 1st day of Janu-
ary, 1864, he was indebted to his ward over eleven hundred
dollars, and that on the 1st day of January, 1865, his said ward
was indebted to him over fifteen hundred dollars, which was
caused by crediting to the guardian large payments in Con-
federate money, many of which were made when it was at a
depreciation of fifty to one.   At the trial the plaintiffs sub-
mitted to the jury the following issue, which was accepted by
the defendants, to-wit:   " Are the plaintiffs entitled to an ac-
count of the guardianship of the defendant Fenner ?"

His Honor charged the jury that if the plaintiffs desired to
avoid the effect of their receipt on the ground of fraud, mis-
representation or mistake, it would be necessary for them to
prove the same to the satisfaction of the jury ; that as much
as the ward did not herself settle with the guardian, but did

so through her husband, a person of full age, and at least of ordinary intelligence, and this too after the lapse of nearly a year after attaining her majority, the law did not cast a pre-. sumption of fraud or undue influence upon the settlement, and the doctrine of *Lee* v. *Pierce* did not apply, especially if the jury believed that the defendant Fenner, gave to the plaintiff Joseph, reasonable and fair opportunity to examine the accounts and vouchers.

After the argument had closed and the Judge had charged the jury, the plaintiffs asked his Honor to instruct the jury as follows: There being a capital sum of $1,618.32, confessed a payment of any less sum would not discharge the liability: Here then was actually nothing paid, only a release from an imaginary debt which the defendant himself had conjured up." His Honor declined the instruction.

There was a verdict in favor of the defendant, the jury finding the issue in the negative.

Thereupon the plaintiffs moved for judgment, *non obstante veredicto* against the defendants for $1,618.32, the principal of the wards estate with interest thereon from the time of marriage, which motion was overruled by the Court.

The plaintiffs then moved for a judgment *non obstante veredicto* for $1,183.00, the amount of the proceeds of the sale of the land, with interest from the time of the marriage. The motion was overruled by the Court.

The plaintiffs then moved for a new trial on account of error in the charge of his Honor in refusing to charge as requested. The Court overruled the motion and thereupon the plaintiffs appealed.

*Clarke* and *Batchelor*, for the appellants.
*Moore & Gatling* and *T. N. Hill*, contra.

Settle, J.   There is a voluminous record in this case, which will convince any one who will read it *that* the plaintiffs are entitled to an account from the defendants.

Per Curiam.                                 Judgment accordingly.